UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALDO KING, JR.,**

    **Plaintiff,**

v.                                                **Case No. 8:23-cv-375-AAS**

**MARTIN J. O'MALLEY,**
**Commissioner of the Social**
**Security Administration,**[1]

    **Defendant.**
_____/

## ORDER

Aldo King, Jr. requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). (Doc. 24). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the memoranda submitted by the parties, the Commissioner's decision is **AFFIRMED**.

**I.  PROCEDURAL HISTORY**

Mr. King applied for DIB and SSI on June 23, 2020, with an alleged

---

[1] On December 20, 2023, Martin J O'Malley became the Commissioner of the Social Security Administration.

1

disability onset date of December 29, 2015.[2] (Tr. 277–90). Disability examiners denied Mr. King's application initially and after reconsideration. (Tr. 121–23, 125–30). Mr. King requested a hearing, which was held on January 11, 2022. (Tr. 240–64). Following the hearing, the ALJ issued an unfavorable decision to Mr. King. (Tr. 18–36). The Appeals Council denied Mr. King's request for review, making the ALJ's decision final. (Tr. 6–12). Mr. King now requests judicial review of the Commissioner's decision. (Doc. 1).

## II.  NATURE OF DISABILITY CLAIM

### A.  Background

Mr. King was 46 years old at the time of the ALJ's decision. (Tr. 302). Mr. King has an eighth-grade education and past relevant work experience as a Cashier II, stores laborer, and cook helper. (Tr. 307). Mr. King alleges disability due to: mental disabilities; panic attacks; insomnia; bipolar, manic depressant; agoraphobia; and schizophrenia. (Tr. 306).

### B.  Summary of the Decision

The ALJ must follow five steps when evaluating a claim for disability.[3] 20 C.F.R. § 416.920(a). First, if a claimant is engaged in substantial gainful

---

[2] The parties agree the court is only addressing Mr. King's claim for SSI benefits. (*See* Doc. 24, p. 1, n. 1; Doc. 27, p. 2).

[3] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 416.920(a)(4).

activity,[4] he is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. 20 C.F.R. § 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[5] *Id.* Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing work that exists in the national economy, he is not disabled. 20 C.F.R. § 416.920(g).

  The ALJ determined Mr. King had not engaged in substantial gainful activity since December 29, 2015, the alleged onset date. (Tr. 23). The ALJ found Mr. King has these severe impairments: bipolar disorder, anxiety

---

[4] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 416.972.

[5] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. 20 C.F.R. § 416.945(a)(1).

3

disorder, psychotic disorder, and an alcohol use disorder. (*Id.*). However, the ALJ concluded Mr. King's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 24).

The ALJ found Mr. King had an RFC to perform a full range of work at all exertional levels, with these non-exertional limitations:

> [Mr. King] could understand, remember, and apply only simple instructions; interact appropriately with supervisors, but only occasionally with coworkers and only in jobs that do not require tandem tasks; could not interact with the general public; could concentrate, persist, and maintain pace for two hours at a time and manage himself; and could adapt to only gradual changes in the workplace, which meant that he would be limited to jobs that do not require production rate or pace work.

(Tr. 25).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Mr. King could not perform his past relevant work. (Doc. 29). However, the VE testified that an individual with Mr. King's age, education, work experience, and RFC could perform other jobs that exist in significant numbers in the national economy. (Doc. 30). Specifically, Mr. King can perform the jobs of industrial cleaner, hospital cleaner, and router. (Tr. 30). As a result, the ALJ concluded Mr. King was not disabled. (Tr. 31).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted)

(stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.  Issues on Appeal

Mr. King raises three issues on appeal: (1) whether the ALJ was required to request a mental capacity assessment evaluation from a consultative examiner; (2) whether the ALJ properly considered the state agency medical findings at the reconsideration stage; and (3) whether the ALJ properly considered Mr. King's subjective complaints.

### 1.  Whether the ALJ was required to request a mental capacity assessment evaluation.

Mr. King argues because consultative psychologist Fred Alberts, Jr., Ph.D., did not provide a functional capacity statement, the ALJ was required to request a mental functional capacity evaluation to properly develop the record. (Doc. 24, pp. 3-6). In response, the Commissioner contends the ALJ did not have to order a mental functional capacity evaluation because the record contained sufficient evidence for the ALJ to make an informed decision. (Doc. 27, pp. 6–7).

The revised regulations explain that an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). The ALJ's RFC

6

determination need not reflect the opinion of any particular medical source. *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."). In addition, an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *see Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (stating that the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision") (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

The ALJ considered Mr. King's testimony, disability reports, function reports, medical records, and prior administrative findings. (*See* Tr. 23–29). The ALJ noted that, although Dr. Alberts described Mr. King as presenting with disorganized/distracted concentration and having thought content of paranoid mentation, Mr. King had good eye contact, was cooperative, and had only mildly impaired attention and concentration with largely logical and coherent thought processes. (Tr. 24–25, 28, 749). The mental status findings from Dr. Alberts are consistent with the ALJ's RFC assessment that Mr. King could understand, remember, and apply only simple instructions; interact

7

appropriately with supervisors, but only occasionally with coworkers and only in jobs that do not require tandem tasks; could not interact with the general public; could concentrate, persist, and maintain pace for two hours at a time manage himself; and could adapt to only gradual changes in the workplace, which meant that he would be limited to jobs that do not require production rate or pace work. (Tr. 25).

Because the record contains sufficient evidence for the ALJ to make an informed decision, the ALJ was not required to order a consultative examination. Thus, remand is not required on this issue.

### 2. Whether the ALJ properly considered the State Agency medical findings on reconsideration.

Mr. King argues the ALJ failed to properly consider the findings of Yamir Laboy, Psy.D., the state agency medical consultant who reviewed Mr. King's record on reconsideration. (Doc. 24, pp. 7–10). In response, the Commissioner contends the ALJ properly considered Dr. Laboy's findings and determined they were persuasive. (Doc. 27, pp. 7–10).

The revised regulations provide that, while ALJs do not have to adopt prior administrative medical findings, they must still consider this evidence under the Commissioner's regulations since Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.913a(b)(1) (citing §§ 416.920b,

416.920c, 416.927).

Mr. Ashmore points to "moderate" ratings in the state agency form Dr. Laboy and his additional explanations, indicating the ALJ should have accommodated these moderate ratings in the RFC and that the RFC does not account for the additional explanations. (*See* Tr. 137–40). However, these are not findings of limitations by the state agency consultants, or even "paragraph B" ratings. The state agency form indicates the narrative portion contains the functional limitations found by the state agency consultants. The summary conclusion ratings are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." Program Operations Manual System (POMS) DI § 24510.060(B)(2)(a), (4); *see also Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (explaining the POMS show summary conclusions ratings are not an RFC assessment). The summary conclusion ratings are not prior administrative medical findings as defined in the regulations, 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5), and an ALJ need not include the rating in the RFC. *See Land*, 494 F. App'x at 49.

In addition, despite Dr. Laboy's opinion of moderation limitations and additional explanations, Dr. Laboy did not find Mr. King disabled. (Tr. 142–43). The ALJ properly determined that Dr. Laboy's findings were persuasive because they were consistent with the record as it relates to Mr. King's mental

9

functioning. (Tr. 29). The ALJ determined that Mr. King could understand, remember, and apply only simple instructions; interact appropriately with supervisors, but only occasionally with coworkers and only in jobs that do not require tandem tasks; could not interact with the general public; could concentrate, persist, and maintain pace for two hours at a time and manage himself; and could adapt to only gradual changes in the workplace, which meant that he would be limited to jobs that do not require production rate or pace work. (Tr. 25). This RFC is consistent with Dr. Laboy's findings that Mr. King was able to comprehend/memorize brief, straightforward job-related instructions and work processes; execute short, simple instructions that did not involve socially demanding work requiring the execution of complex, time-sensitive duties; communicate about routine employment matters, including accepting periodic, instructive supervisory input, but would have difficulty in a customer service position, collaborating with coworkers, or responding to critical managerial feedback. (Tr. 140).

The ALJ properly considered and incorporated Dr. Laboy's findings in Mr. King's RFC and the hypothetical question posed to the VE. *See Mijenez v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (holding that ALJ's RFC limitation to "understanding simple directions; making judgments and simple decisions pertaining to unskilled work" adequately accounted for moderate limitation in the area of concentrating, persisting, and maintaining

10

pace where medical evidence showed that claimant "received mostly outpatient treatment for her bipolar disorder and affective mood disorders"); *Hernandez v. Saul*, No. 19-25041-CIV, 2020 WL 8083837, at *13–14 (S.D. Fla. Dec. 22, 2020) (holding that substantial medical evidence supported ALJ conclusion that claimant could perform "simple, routine, and repetitive tasks and [have] occasional interactions with co-workers, supervisors, and the public, and occasional work-setting changes" despite his moderate limitation in the area of concentrating, persisting, and maintaining pace where the claimant's mental health records "consistently showed that Claimant's mental status exam findings were, for the most part, benign" and claimant was stable on medications). Thus, remand is not required on this issue.

### 3. Whether the ALJ properly considered Mr. King's subjective complaints.

Mr. King argues the ALJ did not properly consider his subjective complaints. (Doc. 24, pp. 9–15). In response, the Commissioner contends the ALJ articulated explicit and adequate reasons for discounting Mr. King's subjective complaints of disabling symptoms. (Doc. 27, pp. 10–15).

Social Security Ruling (SSR) 16-3p and 20 C.F.R. § 416.1529(c) provide guidance on how an ALJ is to evaluate the subjective complaints of a claimant. SSR 16-3p provides that the "subjective symptom evaluation is not an examination of an individual's character," but a two-step evaluation of the

11

evidence at hand. SSR 16-3p, 2017 WL 5180304, at *2–3 (Oct. 25, 2017). First, the ALJ "determine[s] whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. Then, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

Section 416.929(c) provides that an ALJ is to "consider all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [the] symptoms affect [the claimant]." 20 C.F.R. § 416.1529(c)(1). It also provides that medical opinions can be relied on when evaluating a plaintiff's subjective complaints. *Id.* Subsections (c)(2) and (c)(3) further specify how the ALJ is to evaluate the subjective complaints: The ALJ may not reject a claimant's subjective complaints only because the objective medical evidence does not substantiate the complaints. 20 C.F.R. § 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your ... symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). This regulation instructs administrative law judges to "carefully consider any other information [a claimant] may submit about [his] symptoms." *Id.* § 416.929(c)(3). It also provides these six non-exhaustive factors

12

the ALJ should consider when evaluating the subjective complaints: a claimant's daily activities; "the location, duration, frequency, and intensity" of other symptoms; "precipitating and aggravating factors"; "the type, dosage, effectiveness, and side effects" of a claimant's medication taken to alleviate his symptoms; any other treatment for alleviating symptoms; and measures a claimant used to alleviate the symptoms, such as lying down. *Id.*

The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Subjective complaint evaluations are exclusively within the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ properly considered Mr. King's subjective complaints. Mr. King's current claim is for SSI benefits because he was no longer eligible for Title II benefits since his eligibility for it had expired in 2016, and SSI benefits are not payable before the month in which application is made, and so the relevant period for Mr. King's SSI claim is from the protective filing date of his application, June 23, 2020, through the date of the ALJ's March 21, 2022, decision. (Tr. 21, 31, 275–83). 20 C.F.R. § 416.335. The ALJ considered evidence relative to this period when he noted that, in April 2021, Dr. Alberts described Mr. King as presenting with disorganized/distracted concentration and having thought content of paranoid mentation, but having good eye

contact, was cooperative, and had only mildly impaired attention and concentration with largely logical and coherent thought processes. (Tr. 24–25, 28, 749). In February 2021, Mr. King reported that he was "much better on meds," he had stopped taking marijuana, and his normal mood was not anxious or depressed. (*See* Tr. 715–17). As discussed above, the ALJ provided an RFC that included specific limitations in Dr. Laboy's findings that address Mr. King's mental impairments and the consultative examination findings. (Tr. 29).

Despite Mr. King's claims that the ALJ failed to accord sufficient weight to his hospitalization in October 2021, the ALJ properly found the evidence showed that his mental symptoms were largely controlled when he complied with medication. (Tr. 27, 767–78). Mr. King's hospital record noted that he was not taking his medication as prescribed. (Tr. 26–27, 767). Mr. King's psychiatric exam showed he was cooperative, had abnormal/psychotic thoughts, but denied hallucinations or hearing voices, and was not suicidal or homicidal. (Tr. 777). Mr. King improved during his hospital stay and the degree of symptoms was noted to be moderate. (Tr. 775). Thus, the ALJ's inclusion of limitations addressing Mr. King's ability to interact with coworkers and the public in the RFC addresses Mr. King's need to reduce interactions with others.

A review of the ALJ's decision belies Mr. King's argument that the ALJ did not sufficiently articulate reasons for discounting Mr. King's complaints.

14

As contemplated by the regulations, the ALJ considered the objective medical evidence and Mr. King's own statements and articulated specific and adequate reasons for finding Mr. King's subjective complaints not entirely consistent with the evidence. *See, e.g.*, *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (finding the ALJ's discussion of objective medical evidence of record provided "adequate reasons" for the decision to partially discredit the claimant's subjective complaints). Thus, remand is not required on this issue.

## IV.   CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Tampa, Florida on February 27, 2024.

*[signature: Amanda Arnold Sansone]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

15